UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE KERWIN,

      Plaintiff,

v.

COMMUNITY ACTION AGENCY,

      Defendant.

Case No. 20-13160
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [16]**

---

Denise Kerwin was terminated from her job at Community Action Agency after 28 years with the company. CAA maintains that Kerwin was terminated because of her documented history of insubordination and disrespect toward her supervisor, Marshelle Hawver. But Kerwin believes she was terminated because of her age and because her learning disability prevented her from sitting through CAA's monthly staff meetings without causing a disruption. So Kerwin filed suit for retaliation, age discrimination, and disability discrimination under state and federal law. For the reasons that follow, the Court grants CAA's motion for summary judgment and dismisses Kerwin's case.

### I. Background

As CAA seeks summary judgment, the Court accepts as true Kerwin's version of the events. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Factual Background

Kerwin worked for CAA from 1991 through March 2019. (ECF No. 16-11, PageID.140, 149.) For most of that time, Kerwin was an Early Childhood Specialist.[1] (*Id.*; ECF No. 22-5, PageID.234.) In that position, Kerwin helped families care for, understand, and raise healthy children. (ECF No. 22, PageID.189.) And during the relevant time period for this litigation, Kerwin was directly supervised by Hawver. (ECF No. 22, PageID.191.)

As far as her performance with families, everyone agrees that Kerwin did the job well. (*See, e.g.*, ECF No. 22-2, PageID.225 (Hawver agreeing that Kerwin was "not discharged . . . related to any of her actual performance . . . with the families that she served[.]").)

But Kerwin had issues with disruptive behavior in CAA's monthly staff meetings dating back to 2001. A memo from a March 2001 staff meeting noted that Kerwin called her supervisor "annoying," and another from an April 2003 staff meeting noted that Kerwin ripped in half a document that was under review. (*See* ECF No. 22-6, PageID.239; ECF No. 16-5, PageID.125; ECF No. 16-6, PageID.127.) But for the better part of three decades, her behavior did not seem to cause much of an issue. (*See, e.g.*, ECF No. 22-1, PageID.216 (Hawver's 2012 performance evaluation of Kerwin marks Kerwin as "exceeds expectations" overall and notes that she is "an absolute joy to work with").)

---

[1] Kerwin was briefly elevated to Early Head Start Supervisor between 2015 and 2017, but her demotion from that position back to Early Childhood Specialist is not at issue here. (ECF No. 16-11, PageID.140, 149.)

2

Meanwhile, in 2010, Kerwin was diagnosed with a "Learning Disorder NOS [Not Otherwise Specified]." (ECF No. 16-13, PageID.162; ECF No. 22-6, PageID.240.) The assessment explained that she "has excellent cognitive skills but struggles with new written information and complex patterns and mathematics." (ECF No. 16-13, PageID.162.) And, according to Kerwin, her learning disorder manifested itself most clearly in staff meetings, where it caused her to "lose track of the meetings. [She] might interrupt and ask questions. [She] g[o]t agitated . . . when [she was] frustrated that [she could not] keep up." (ECF No. 22-6, PageID.238.)

Kerwin promptly informed CAA of her diagnosis. (ECF No. 16-11, PageID.149; ECF No. 22-2, PageID.221.) And Kerwin acknowledges that CAA took steps to accommodate her during meetings by permitting her to have "fidget materials" and by allowing her to take brief breaks or walk around during meetings when she felt agitated. (ECF No. 16-11, PageID.146–147.)

The real trouble began in 2017. In January, Kerwin received a "documented verbal warning" for her behavior in a staff meeting. (ECF No. 16-7.) Though the record does not clearly explain what happened, the warning noted that, for years, Kerwin had "an ongoing cycle . . . of . . . undermin[ing]" Hawver. (*Id.* at PageID.129.) It listed several areas for improvement unrelated to meetings and warned that the "next step will be a written reprimand." (*Id.* at PageID.130.)

Then, in March 2017, Kerwin received the threatened written reprimand. (ECF No. 16-8, PageID.132.) Though the memorandum and record are again thin on details, the reprimand says that Kerwin "presented [her]self inappropriately as an

3

administrator. . . . [And showed a] lack of respect/boundaries for [her] supervisor." (*Id.*) The reprimand warned that the "next disciplinary step will be termination of employment." (*Id.*)

Shortly thereafter, however, Hawver issued a "follow-up" to the written reprimand. (ECF No. 16-9, PageID.134.) The follow-up indicated that Kerwin and Hawver had "continued discussion regarding [the written reprimand] . . . [and that Kerwin] indicated that when [she] beg[a]n to have difficulty in meetings, speaking out of turn, rambling, etc. that [she] need[ed] to be told to leave the meeting." (*Id.*) But Hawver refused this request, saying it "was not [her] responsibility to tell [Kerwin] to leave a meeting and that [Kerwin] needed to conduct [her]self appropriately." (*Id.*) However, Hawver noted that Kerwin had "indicated [her] desire for . . . a reasonable accommodation, (regarding [her] documented disability), for how [she] conduct [her]self during meetings." (*Id.*) Hawver said she would alert CAA's Chief Executive Officer and an HR representative of the request. (*Id.*; ECF No. 22, PageID.194.)

Kerwin's difficulty during meetings resurfaced in December 2018. (ECF No. 16-10, PageID.136.) Kerwin describes her behavior as follows: "there were a lot of changes that were meant—that were mentioned in that meeting. I felt overwhelmed. I knew that I was feeling overwhelmed. I left the meeting. I came back. I apologized. I think there was one more change that came afterwards and I melted down." (ECF No. 16-11, PageID.147.) She continued, "I probably put my head in my hands and said I'm not going to do this or not going to do that." (*Id.* at PageID.152.) But rather

than terminate her per the warning in the reprimand, CAA suspended Kerwin for five days without pay. (ECF No. 16-10, PageID.136.) The reasons given for her suspension were "lack of respect" and "insubordination." (*Id.*) And the memorandum recording her suspension again threatened that "the next, and final step, of progressive discipline will be termination of employment." (*Id.*)

Around this time, Kerwin and Hawver again discussed potential accommodations for her behavior in meetings. (ECF No. 16-11, PageID.147 (noting that her last request for accommodation was "two or three months before" she was terminated).) While Kerwin never asked to be wholly excused from the staff meetings, she did request that Hawver tell her to leave meetings when she got agitated and that the meetings be paused to give her breaks throughout. (ECF No. 16-11, PageID.146.) Hawver again denied this request saying it was "not her responsibility" to direct Kerwin to leave. (*Id.*) And for her part, Kerwin agreed that she "was capable of individually assessing when [she] need[ed] to take a break." (*Id.*) However, Hawver again permitted Kerwin to take breaks as needed and to get up and walk around the room when she felt herself getting agitated. (*Id.*) And Hawver offered to meet with Kerwin before the meetings to go over any new information. (*Id.*) Kerwin also acknowledged that meeting notes were shared with staff after the fact. (*Id.*)

Despite these efforts, Kerwin was fired in March 2019 for disrupting another staff meeting. (ECF No. 16-12, PageID.155.) According to Kerwin, the team was conducting introductions for the benefit of new employees. (ECF No. 16-11, PageID.153.) While other staff explained that they "cohabitated" with their office

5

mates, Kerwin introduced herself and said her "cellmate" was Nate, in what she called a "benign rhyme." (*Id.*; ECF No. 22, PageID.196.) She apparently also said the word "damn," and then acknowledged that swearing was not permitted in the office. (ECF No. 16-11, PageID.153.) The termination letter notes that she had made "inappropriate comments, affecting the team dynamic." (ECF No. 16-12, PageID.155.) Kerwin was then 60 years old. (ECF No. 16-2, PageID.105.)

Following her termination, Kerwin was hired by Catholic Social Services in May 2019. (ECF No. 16-11, PageID.141.) She did not request any accommodations from CSS. (*Id.* at PageID.142.) And CAA hired Emma Garrison to replace Kerwin, a woman in her early thirties. (ECF No. 22-12, PageID.259.)

## B. Procedural Background

Kerwin filed a charge of discrimination with the Michigan Department of Civil Rights on December 5, 2019, asserting age and disability discrimination. (ECF No. 16-2, PageID.105.) Notably, she did not check the box for retaliation. (*Id.*) The EEOC dismissed her charge on September 2, 2020. (ECF No. 16-3, PageID.107.) Kerwin then filed this lawsuit on December 1, 2020. (ECF No. 1.) She asserts claims for retaliation due to a disability, age discrimination, and disability discrimination under both state and federal law. (*Id.* at PageID.5–12.)

Following discovery, CAA filed a motion for summary judgment. (ECF No. 16.) Given the clear briefing and record, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

## II. Standard

"Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(a)). A material fact is "one 'that might affect the outcome of the suit,' and a genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. ADA Retaliation Claim

CAA argues that Kerwin's ADA retaliation claim should be dismissed because she failed to exhaust it. (ECF No. 16, PageID.89.) The Court agrees.

As a general rule, an ADA plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47 (1974); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Permitting an action "to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *See Younis*, 610 F.3d at 362. At the same time, because aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally. *See Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 732 (6th Cir. 2006). Accordingly, "where

7

facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010).

Although Kerwin is correct that her failure to check the retaliation box is not dispositive, her charge was not sufficiently clear to prompt the EEOC to investigate a claim of ADA retaliation. Her charge reads in relevant part: "I was employed by the above-named employer in 2019. . . . I am a person with a disability. . . . However, in 2019 I requested and was denied a reasonable accommodation. The reasonable accommodation would have allowed me to remain employed. Rather than accommodate me, I was abruptly discharged on March 3, 2019. I believe that I was discharged based on my Age (60) and disability[.]" (ECF No. 16-2, PageID.105.) Kerwin's charge clearly alleges age and disability discrimination, and she checked the boxes for each. (*Id.*) But read fairly, her charge would not put the EEOC on notice of a retaliation claim. Instead, it suggests that she needed an accommodation to remain employed, and that CAA denied her such an accommodation. And Kerwin's reliance on the word "abruptly" to suggest that the EEOC would have also investigated a retaliation claim stretches the word too far. (ECF No. 22, PageID.199.) Instead, the charge suggests that Kerwin was "abruptly" discharged because she could no longer do her job without an accommodation. And CAA's response to the charge of discrimination—which only addressed allegations of age and disability discrimination—further supports this conclusion. (*See* ECF No. 23-1, PageID.272.)

So the ADA retaliation claim is dismissed.

### IV. Age Discrimination Claims

Kerwin also brings claims under the Age Discrimination in Employment Act (ADEA) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). (ECF No. 1, PageID.11–12.) Because the parties do not dispute that age discrimination claims under the ELCRA and the ADEA are analyzed under the same framework, the Court will follow the parties' lead and address both claims under the framework of the ADEA. *See also Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 n.5 (6th Cir. 2020) (doing same and collecting cases).

The ADEA prohibits discharging an employee "because of" her age. 29 U.S.C. § 623(a)(1). So an ADEA plaintiff must prove, by direct or circumstantial evidence, that age was a "but-for" cause of the discharge. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). Because Kerwin relies only on circumstantial evidence of age discrimination (ECF No. 22, PageID.201), the Court proceeds under the familiar *McDonnell Douglas* burden-shifting framework. *See George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020). This analysis proceeds in three parts. First, Kerwin carries the initial burden of establishing a prima facie case of discrimination. *See id.* at 459. Second, the burden shifts to CAA to evidence a legitimate, non-discriminatory reason for her termination. *See id.* And, third, if CAA meets its burden, Kerwin must show that CAA's proffered explanation was pretext designed to mask discrimination. *See Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020); *Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 704 (6th Cir. 2016).

Kerwin has satisfied her initial burden. To make a prima facie case, she must show: "1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010). CAA only challenges the third element, arguing that Kerwin was not qualified for her position. (ECF No. 16, PageID.92–93.) However, as Kerwin points out, CAA admitted that Kerwin was qualified for her job in its answer. (*See* ECF No. 8, PageID.27 ("Defendant admits Plaintiff was qualified for the jobs she held with Defendant[.]").) And CAA cannot take that admission back. *See Bank of the Ozarks v. Perfect Health Skin & Body Ctr., PLLC*, 835 F. App'x 49, 59 (6th Cir. 2020) ("A judicial admission renders a fact uncontested in a summary judgment proceeding." (internal quotation omitted)). So Kerwin has made out a prima facie case of age discrimination.

At step two, CAA has met its burden of showing that it had a legitimate, nondiscriminatory reason for terminating Kerwin: her documented history of disrespect and insubordination in staff meetings. (ECF No. 16, PageID.94.) *See Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013) ("City of Columbus met its burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action: insubordination.").

But Kerwin has not met her burden of proving that CAA's proffered reason for her termination was pretext for age animus. Indeed, Kerwin provided no evidence of age discrimination beyond her prima facie case, let alone evidence that would suggest

10

that age discrimination was a but-for cause of her termination.[2] If satisfying the prima facie case alone were enough to survive summary judgment, "then the pretext prong would be superfluous." *See Miles*, 946 F.3d at 895. Here, "no reasonable juror could find that replacing [Kerwin] with someone [thirty] years younger alone establishes that [CAA's] rationales for [Kerwin's] termination were pretextual." *Id.*; *see also Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016).

Instead of presenting any evidence that her termination was pretext for age discrimination, Kerwin argues that "questions of intent in discrimination cases should not be resolved on summary judgment." (ECF No. 22, PageID.204 (citing *Garrett v. Detroit Edison Co.*, 840 F.2d 16 (6th Cir. 1988).) But that argument misunderstands the purpose of the *McDonnell Douglas* framework: "the question to be asked in deciding an employer's motion for summary judgment is whether the evidence, taken as a whole and in the light most favorable to plaintiff, is sufficient to permit a rational trier of fact to conclude that age was the 'but-for' cause of the challenged employer decision." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 532 (6th Cir. 2014). So the Court is not "resolving" a question of intent, rather it is examining whether Kerwin has produced sufficient evidence for a reasonable jury to make a determination of causation should the case proceed to trial. She has not.

---

[2] Kerwin only discusses pretext in one section of her brief, even though pretext figures into both her age discrimination and disability discrimination claims. (*See* ECF No. 22, PageID.204–205.) Though this discussion falls under the age discrimination heading, a close reading reveals that virtually all of the analysis there relates to disability discrimination. As such, the Court will address these arguments in section V.A. below.

And to the extent that Kerwin merely argues that intent is a question of fact for the jury, she still bears the burden of producing "evidence on which the jury could reasonably find for [her]." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) ("The mere existence of a scintilla of evidence in support of a [party's] position will be insufficient."). Kerwin has provided no evidence beyond her prima facie case that discriminatory intent related to her age factored into her termination from CAA.

So Kerwin's ADEA and ELCRA age-discrimination claims are dismissed.

## V. Disability-Related Claims

Kerwin makes three, related disability claims under the ADA and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA): she was terminated because of her disability, CAA failed to accommodate her disability, and CAA failed to engage in the interactive process. (ECF No. 22, PageID.205.)

Because the parties do not dispute that disability-based claims under the PWDCRA and the ADA are analyzed under the same framework, the Court will again follow the parties' lead and address these claims under the framework of the ADA. *See also Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 n.4 (6th Cir. 2020) (using parallel analysis in disability discrimination context); *Arndt v. Ford Motor Co.*, 716 F. App'x 519, 527 (6th Cir. 2017) (using parallel analysis in failure-to-accommodate and failure-to-engage-in-interactive-process contexts); *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) ("The PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." (internal quotations omitted)).

12

### A. Discriminatory Termination

Under the ADA, employers cannot discriminate against individuals with qualifying disabilities by using an employee's disability as a basis for "discharg[ing]" them. 42 U.S.C. § 12112(a). Kerwin presents only circumstantial evidence of disability discrimination (ECF No. 22, PageID.210), so the Court will rely on the *McDonnell Douglas* burden-shifting framework outlined above. *See also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019). And Kerwin's ultimate burden is to show that her disability was a but-for cause of her termination. *Lewis v. Humboldt Acquisition Corp.,* 681 F.3d 312, 317 (6th Cir. 2012) (en banc).

To establish a prima facie case of disability discrimination, Kerwin must show that 1) "she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016).

CAA challenges only the first and second elements. (ECF No. 16, PageID.97.) Though CAA says that it "does not concede that Plaintiff was disabled or that she was regarded as having a disability," it never explains why, nor does it cite any cases to support that assertion. (ECF No. 16, PageID.97–98.) So, arguably, this issue is waived. "[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.,* 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder,* 90 F.3d

1110, 1118 (6th Cir. 1996)); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citations omitted)).

But even assuming CAA did not waive this argument, Kerwin has established a genuine dispute as to whether she was disabled, or whether CAA regarded her as disabled. For starters, this is a "lenient standard," and Congress has directed courts to construe the definition of disability "in favor of broad coverage." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 854 (6th Cir. 2018) (citing 42 U.S.C. § 12102(4)(A)). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include "concentrating, thinking, [and] communicating[.]" *Id.* Here, Kerwin presented CAA with a formal diagnosis of a learning disability that noted that she "struggles with new written information and complex patterns and mathematics." (ECF No. 16-13, PageID.162.) In addition, Kerwin testified to her leaning disorder's impact on her ability to sit through long meetings: she said she would "lose track of the meetings. [She] might interrupt and ask questions. [She] g[o]t agitated . . . when [she was] frustrated that [she couldn't] keep up." (ECF No. 22-6, PageID.238.) And, finally, at a minimum, there is evidence to suggest that Hawver regarded Kerwin as having a disability, as she wrote in one of Kerwin's disciplinary notes that Kerwin had "indicated [her] desire for . . . a reasonable accommodation, (regarding [her] documented disability)[.]" (ECF No. 16-9, PageID.134); *see also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019) ("[T]o state the threshold

14

condition of a 'regarded as' ADA claim, an employee need only show that their employer believed they had a 'physical or mental impairment,' as that term is defined in federal regulations."). This is enough to create a genuine dispute as to her disability.

CAA next challenges whether Kerwin was otherwise qualified for the position. (ECF No. 16, PageID.97.) But, again, CAA is bound by its admission that Kerwin was qualified for her job. (*See* ECF No. 8, PageID.27 ("Defendant admits Plaintiff was qualified for the jobs she held with Defendant.")); *see also Bank of the Ozarks v. Perfect Health Skin & Body Ctr., PLLC*, 835 F. App'x 49, 59 (6th Cir. 2020) ("A judicial admission renders a fact uncontested in a summary judgment proceeding." (internal quotation omitted)). So Kerwin has met her prima facie burden.

At the next step of *McDonnell Douglas*, CAA has, again, met its burden of showing that it had a legitimate, nondiscriminatory reason for terminating Kerwin: her history of disrespect to Hawver and repeated insubordination in staff meetings. (ECF No. 16, PageID.94.)

So the only remaining question is whether Kerwin can prove that the stated reason for her termination was merely a pretext for discrimination. And unlike her age-discrimination claim, Kerwin does make arguments about her termination being a pretext for disability discrimination. (ECF No. 22, PageID.205.)

A plaintiff can show pretext in three interrelated ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's

action." *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 530 (6th Cir. 2012). But these categories are not exclusive, and instead are "a convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Id.* In other words, "[t]o satisfy her burden and survive summary judgment, [Kerwin] must 'produce sufficient evidence from which a jury could reasonably reject [CAA's] explanation of why it fired her.'" *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (citing *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

In a somewhat conclusory fashion, Kerwin argues both that CAA's reasons did not actually motivate the decision to fire her, and that its reasons were insufficient. (ECF No. 22, PageID.205.)

To show that CAA's reasons did not actually motivate its decision, Kerwin must provide evidence "which tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 82 (6th Cir. 2020) (citing *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 9 (6th Cir. 2007)). But there is little reason to believe that disability discrimination more likely motivated CAA's decision to fire Kerwin than her history of insubordination and disrespect dating back to 2001. This is particularly true when coupled with the clear record of progressive discipline related to this exact behavior. Moreover, CAA could have fired Kerwin in December 2018 per her progressive discipline plan, but instead it suspended her for five days, met with her once more to discuss possible accommodations, and then granted her a new accommodation

16

wherein Hawver would meet with Kerwin before staff meetings to discuss the agenda. This does not tend to prove an illegal motivation for her termination.

Lastly, there is some facial appeal to an argument that Kerwin saying "damn" and referring to her "cellmate Nate" could not be sufficient to motivate CAA to terminate her. But Kerwin has not made it. Indeed, she only makes a conclusory statement that CAA's reasons were insufficient without explaining why. (ECF No. 22, PageID.205.) However, Kerwin does mention in the statement of facts that that "[c]ursing in Defendant's workplace . . . was a common occurrence, including one employee's regular use of the 'F' word and another's serial use of 'flipping the bird.'" (ECF No. 22, PageID.193; ECF No. 22-6, PageID.239.) And it is true that one way to show that a stated reason is insufficient is to provide "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which [CAA] contends motivated its discipline of [Kerwin]." *Miles*, 946 F.3d at 893. So the Court will analyze if this is enough to show that CAA's reasons were insufficient.

But to make such a showing, Kerwin must provide evidence of additional similarities. For example, she should show that she and the proposed comparator "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Miles*, 946 F.3d at 893 (but noting that this is the standard at the prima facie stage, and that the standard is higher at the pretext stage). Kerwin has not

17

come close to meeting this burden. For starters, Kerwin was not fired for regularly swearing or "flipping the bird"—or even for saying "damn" or my "cellmate Nate"— she was fired for insubordinate and disrespectful behavior in staff meetings over a period of years. (ECF No. 16, PageID.94.) And Kerwin does not provide evidence that these employees held her same or similar position. There is simply no evidence of a similarly situated employee who engaged in substantially identical behavior. Moreover, Kerwin admitted that she was "disrespectful" of Hawver and "probably made more than one apology through [her] 28 years of employment." (ECF No. 22-6, PageID.239.)

Beyond these unpersuasive arguments, Kerwin only makes conclusory statements that CAA's stated reasons for firing her were pretextual. But such conclusory statements do not satisfy her burden. *Brown,* 814 F. App'x at 82. So Kerwin has not produced sufficient evidence from which a jury could reasonably reject CAA's explanation of why it fired her.

### B. Failure to Accommodate

In addition to prohibiting discriminatory terminations, the ADA also requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *See* 42 U.S.C. § 12112(b)(5)(A). Unlike Kerwin's other discrimination claims, failure-to-accommodate claims are analyzed under the direct evidence framework. *See Hostettler*, 895 F.3d at 853 (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)).

"To make out a claim for the denial of a reasonable accommodation, an employee must first show that [s]he proposed an accommodation and that the desired accommodation is objectively reasonable." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 307 (6th Cir. 2016); *see also Kleiber*, 485 F.3d at 870. Kerwin has not done so.

There is no genuine dispute that CAA granted Kerwin several accommodations that she had requested, and that it proposed at least one accommodation in return. For example, Kerwin acknowledged that CAA permitted her to have fidget materials during meetings (ECF No. 16-11, PageID.146), to get up and walk around if she felt agitated (*id.* at PageID.148), and to leave staff meetings when she needed breaks (*id.*). In addition, Kerwin acknowledged that Hawver proposed meeting with her before staff meetings to discuss the agenda, and that "staff notes of the meetings would come out" after the meetings. (*Id.* at PageID.146–147). Indeed, the only accommodations that Kerwin specifically mentions in her response to the motion for summary judgment were "being allowed either to take breaks when needed, or to look past minor, benign eruptions by Plaintiff by either rescheduling her or providing her with an alternative method of receiving information being exchanged in lengthy staff meetings." (ECF No. 22, PageID.210–211.) But, as mentioned, CAA provided these accommodations. And Kerwin never asked to be excused from staff meetings altogether. (ECF No. 16-11, PageID.146.) So it is not clear what more Kerwin wanted from CAA.

To the extent that Kerwin might have preferred that Hawver stop the meeting when Kerwin took her breaks, that Hawver direct her to leave meetings when she became disruptive, or that Hawver just "look past minor, benign eruptions," Hawver's decision not to do so does not mean that she failed to accommodate Kerwin. "If denied a requested accommodation, an employee cannot force his employer to provide that specific accommodation if the employer offers an alternative reasonable accommodation." *Tennial*, 840 F.3d at 307. Here, Hawver did just that by permitting Kerwin to leave the meeting, stand up and walk around, speak to Hawver before the meeting, or to review the meeting notes afterwards. And, as for Kerwin's desire that Hawver direct her to leave meetings, Kerwin agreed that she "was capable of individually assessing when [she] need[ed] to take a break." (ECF No. 16-11, PageID.146.) She has not explained why any of these proposed accommodations were not reasonable alternatives. Indeed, as CAA points out, it "provided Plaintiff with accommodations with respect to staff meetings . . . but Plaintiff did not utilize those accommodations." (ECF No. 16, PageID.97.)

"Because [Kerwin] has not met h[er] evidentiary burden in showing that [s]he made a request for an accommodation under the ADA, and because [Hawver] offered an alternative reasonable accommodation," Kerwin's failure-to-accommodate claim is without merit. *See Tennial*, 840 F.3d at 307.

### C. Failure to Engage in the Interactive Process

Finally, Kerwin alleges that CAA failed to engage in the interactive process. (ECF No. 22, PageID.205.) However, she does not explain the basis of this claim, nor

does she cite any cases to support this assertion.  So, as explained above, this issue is arguably waived. *See Kennedy v. Comm'r of Soc. Sec.,* 87 F. App'x 464, 466 (6th Cir. 2003); *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997).

But even assuming that this claim has not been waived, it would fail. Even though an employer is required by the ADA to engage in such a process in good faith, "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014). For the reasons already provided, the Court finds that Kerwin has not made even a prima facie showing that she requested a reasonable accommodation, so she cannot bring a separate claim for failure to participate in the interactive process.

## VI. Remaining State-law Claim

This leaves Kerwin's PWDCRA retaliation claim, which—unlike its ADA counterpart—has no exhaustion requirement. *See* Mich. Comp. Laws § 37.1607; *Jackson v. City of Flint*, 477 N.W.2d 489, 491 (Mich. Ct. App. 1991). The Court's only basis for jurisdiction over this claim is supplemental jurisdiction. Now that all of Kerwin's federal claims have been dismissed, the calculus for exercising supplemental jurisdiction has changed. "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Instead, "the balance of considerations usually will point to dismissing the state law claims[.]" *Bell-Kachelski v. Michigan Prot. & Advoc. Serv., Inc.*, No. 17-2508, 2018

21

WL 6823769, at *3 (6th Cir. Sept. 10, 2018) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)). So the Court declines to exercise supplemental jurisdiction over Kerwin's PWDCRA retaliation claim (Count IV) and dismisses it without prejudice to refiling in state court.

### VII. Conclusion

For the foregoing reasons, Kerwin's PWDCRA retaliation claim is DISMISSED WITHOUT PREJUDICE. The Court GRANTS CAA's motion for summary judgment on all other claims. A separate judgment will follow.

SO ORDERED.

Dated: May 5, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE